36 N.J. Super. 6 (1955)
114 A.2d 746
HENRY L. KLOTZ, PLAINTIFF-RESPONDENT,
v.
HARRY P. LEE, JR., DEFENDANT-RESPONDENT, AND JOHN W. BREISH AND P.J. BREISH, T/A P.J. BREISH & SONS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1955.
Decided June 3, 1955.
*9 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. William C. Gotshalk argued the cause for defendants-appellants (Mr. Edward W. Eichmann, attorney).
Mr. Maurice Y. Cole argued the cause for defendant-respondent (Messrs. Cole & Cole, attorneys).
Mr. H. Albert Hyett argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
On July 23, 1953 plaintiff was a passenger in a Nash automobile being driven by the defendant, Lee, in a northwesterly direction toward Mays Landing on a county highway referred to as the Somers Point-Mays Landing road. The car collided almost head-on with a Mercury station wagon proceeding in the opposite direction, driven by the defendant John W. Breish on the business of the defendant P.J. Breish. Both cars were demolished and their occupants injured. Only plaintiff's personal injuries, which were very extensive, are here material.
Plaintiff brought this action to recover damages for his injuries against Lee and the Breishes. Lee cross-claimed against the Breishes for personal injuries and damages to his car and the Breishes cross-claimed against Lee for the damage to the Breish car. Lee's insurance carrier, under circumstances later recounted, had previously made a settlement payment to John W. Breish on his claim for personal injuries. There was a jury verdict of $35,000 in favor of plaintiff against the Breishes and for no cause of action on plaintiff's claim against Lee; in favor of Lee on his cross-claim against *10 the Breishes for $1,500; and for no cause of action on the Breish cross-claim against Lee. After trial the court reduced the plaintiff's verdict by $12,500 for reasons to be related. The several grounds of appeal argued will be stated and discussed seriatim.

I.
Appellants complain of the striking on motion of one of the separate defenses in their amended answer to the Lee cross-claim, viz., "defendant John W. Breish * * * has received payment for personal injuries sustained by him. Payment of the same has been made on behalf of the defendant Harry P. Lee, Jr." Their position is that they are entitled to raise an estoppel against Lee on the basis of the compromise and settlement of Breish's personal injury claim, under the holding in Kelleher v. Lozzi, 7 N.J. 17 (1951), if the settlement "was authorized by the insured," Lee. The motion to strike was supported by an affidavit of the supervisor of claims of Lee's insurance carrier to the effect that the settlement with Breish was effected by his own direction and without any consultation with, permission from, or advices to Lee; and that by the terms of the policy no consultation with the assured was required for such a step. There was also an affidavit by Lee to the effect that he knew nothing about the settlement until after it had been accomplished. There were no answering affidavits on behalf of the respondents to the motion. There being no genuine issue of disputed fact on the motion, its resolution involved only a question of law. R.R. 4:58-3. See Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954).
The action of the trial court was unexceptionable. Kelleher v. Lozzi, supra, does not apply. There the plaintiff was held estopped from maintaining an action for personal injuries and damages to her car against a defendant where, in a prior action against her by the then defendant arising out of the same automobile accident, her attorney had by her authority settled the claim, obtained a release on her behalf and procured a discontinuance of the action against her. *11 (7 N.J., at page 28). The present situation is distinguished by the undisputed facts that the settlement of the Breish personal injury claim against Lee was without his knowledge and by neither his agent nor his authority, but solely under right flowing from the insurance contract. Isaacson v. Boswell, 18 N.J. Super. 95 (App. Div. 1952).

II.
Breish contends there was no evidence of negligence on his part sufficient to have warranted submission of the issue of his liability to the jury. The question was raised by motion to dismiss at the trial (as to plaintiff's claim) and on subsequent motion for a new trial. We have subjected the lengthy record of the testimony to close scrutiny and conclude therefrom that there was a jury issue with respect both to appellants' liability to plaintiff and as against Lee. We do not deem it necessary to recount the testimonial details at length. Suffice it to say there was ample basis in the proofs upon which the jury could have concluded that the Breish car approached Lee's automobile on the wrong side of the narrow road head-on as a result of taking a curve at excessive speed and that a sudden turn by Lee to his left, induced either by an effort to avoid the other vehicle or by sharp braking of the car, had the unfortunate consequence of a collision when Breish concurrently veered back to his own right side. Action in such an emergency is not negligence merely because of a mistake in judgment. Clayton v. Vallaster, 118 N.J.L. 568 (E. & A. 1937); Ferry v. Settle, 6 N.J. Super. 107 (App. Div. 1950), modified on another point, 6 N.J. 254 (1951).

III.
Appellants contend that an agreement pertaining to a settlement made between plaintiff and counsel for the defendant Lee on the second day of the trial warranted either dismissal of plaintiff's action as against them, or, in the alternative, disclosure of the fact to the jury, and that the failure of the *12 trial judge on motion at the trial to take either of these steps was error. The agreement referred to was oral and was not disclosed to Lee until after it was entered into. It was negotiated by the attorney who represented both Lee's insurance carrier, on the claims against him, and Lee himself in relation to his cross-claims against Breish. The undertaking was authorized and directed by the insurance company, not by Lee. The arrangement was, in substance, that if the jury returned a verdict, and regardless of its form, the company would pay plaintiff and the latter would accept the sum of $12,500 in full settlement and satisfaction of his claim against Lee, subject to the understanding that if the verdict was against both Lee and Breish plaintiff would not exact more than 50% of the verdict from Breish or his insurance carrier. Nothing was paid pursuant to this agreement until after the trial. Thereupon Lee's insurance company did pay plaintiff $12,500 and the trial court consequently reduced the $35,000 verdict returned in favor of plaintiff and against the Breishes by that amount.
The agreement was revealed to the trial judge and to counsel for appellants, privately, as soon as entered into. A day of trial transpired without formal objection on the part of the Breishes. This may well have operated as a waiver. But we need not determine the point. The motion for dismissal was based on the theory that the arrangement constituted a release of one of several joint tortfeasors, thereby in law releasing the others. The contention is not renewed on this appeal and we consider it abandoned. The gravamen of appellants' present position is that the "settlement" should have been made known to the jury. It is based on five grounds: (a) the right of trial by jury; (b) violation of the rule of Kelleher v. Lozzi, supra; (c) litigation of a moot question; (d) Lee's counsel became, in effect, counsel to appellants in invitum; (e) such an arrangement encourages collusion. We are not persuaded by any of them.
Considerations germane to the nature of the right of trial by jury supported, rather than militated against the decision of the trial court to withhold this occurrence from *13 the jury. Our law abounds with trial procedures and rules of evidence conceived in the basic policy of preventing any extraneous considerations from obtruding on the fair discharge of the jury's single function of determining the material factual issues on their merits. Were the agreement to have been revealed, it would have had to be exposed in exactitude and fully. This would have apprised the jury of Lee's insurance coverage, thereby risking vitiating the proceedings. The Breishes urge that "the psychological effect of a settlement on the jury might have been a legitimate advantage to which [they were] entitled." Our reaction is antithetical. The advantage would not be legitimate. It would tend to influence the jury to consider the arrangement an admission of negligence on the part of Lee which, in fact, it was not, and thus prejudice a fair adjudication of the cross-claims as between Lee and Breish, as well as the determination of plaintiff's fully reserved cause of action against Breish.
The situation before us is to be distinguished from that involved under the rule that the amount received in settlement from one defendant may be shown in the trial against others in an action to recover for the same loss, by way of mitigation of damages. Gelsmine v. Vignale, 11 N.J. Super. 481 (App. Div. 1951); Brandstein v. Ironbound Transportation Co., 112 N.J.L. 585 (E. & A. 1934). Here the agreement to pay was not only executory but conditional upon an event that might not occur, the return of a verdict by the jury. The public policy objective of the Brandstein rule, that there should be only a single satisfaction for the same injury, was fully served here by the adjustment of the jury verdict in favor of plaintiff to the extent of the payment by Lee's insurance company, as soon as the payment was made. It has, indeed, been frequently observed by negligence practitioners that adjustment of verdicts by the court after rendition, rather than instructions to the jury during trial, is the only assuredly non-prejudicial method of handling the problem of credit for partial satisfaction of a claim by one of several defendants. But see Annotation, 104 A.L.R. 931.
*14 Nothing in Kelleher v. Lozzi, supra, required advising the jury of the arrangement or terminating the litigation or any part of it, as urged by appellants. As noted, the motion for dismissal of plaintiff's cause below was based upon the argument of release of a joint tortfeasor, not estoppel. The latter ground cannot be asserted now for the first time where no substantial rights were affected. R.R. 1:5-3. The Kelleher case applies only to a concluded settlement authorized by the person sought to be estopped. See the discussion under I, supra. The arrangement here was neither concluded prior to verdict nor authorized by Lee. This also disposes of the argument in its relation to the cross-claims as between Lee and Breish.
The contention that the litigation became moot after the arrangement was entered into is not a fact. It certainly was not moot as between Lee and Breish, inter sese, or between plaintiff and Breish. And as between Lee and plaintiff, as noted, the agreement was executory and conditional, and, perhaps, even revocable. As between those parties, moreover, the asserted mootness was no concern of appellants, who were strangers to that controversy. The argument that Breish was saddled with an attorney not of his choosing is simply not true. Counsel for Lee and his insurance carrier were entitled to carry on with their position, pending the event of the settlement conditions, whatever the incidental discommodity to Breish. The argument that the course pursued at the trial should have been forbidden as leading to "collusion" and "intrigue" is specious. Negotiations for settlement are an ordinary and salutary concomitant of litigation. We perceive no offense to public policy in the singular agreement made in this case, nor any prejudice whatever to appellants' legitimate rights. We imply no opinion as to its enforceability.

IV.
It is contended that the $35,000 verdict in favor of plaintiff was grossly excessive. Plaintiff was 58 years of age and in receipt of a pension since 1930 from the United States *15 Veterans Administration as being purportedly 100% disabled. The only clue in the record to the basis for the pension is a condition of paralysis of the deltoid muscle, affecting plaintiff's left arm and shoulder, sustained in 1930. There was evidence that prior to the accident he was in reasonably good health, aside from the condition mentioned, worked on the farm he owned with his wife and tended a roadstand where products of the farm were sold. When brought to the hospital after the accident he was unconscious, his pulse was imperceptible, his blood pressure could not be recorded, and he was in shock, requiring injections of blood plasma. He had numerous lacerations, contusions, and bruises to both shoulders, face, chin, scalp, chest and left leg. There was a cerebral concussion, unconsciousness for from two to three days and disorientation for another four or five days. He had fractures of the nose, upper and lower jaws, and of the fifth and sixth ribs. There were injuries to his mouth, teeth and gums. He was in the hospital for sixteen days. Over a year after the accident he had distinct neurological and pathological personality symptoms traceable to the accident. Fourteen teeth and 6 roots required removal, involving cutting of the gums and 18 sutures. He wore splints for his fractured jaws for five weeks. There were eye symptoms, including double vision, which were possible causes of a condition of headaches and drowsiness. The medical testimony was that the eye condition was due to the accident and probably permanent. There was evidence of nasal blockage because of the nose fracture and a considerable degree of consequent deafness. Plaintiff bears several permanent scars and disfigurements attributable to the accident.
We conclude that the jury's dollar estimate of the damages sustained by plaintiff was, perhaps, liberal, but not so excessive, in the light of the whole picture of the ravages of this accident upon the body and mind of the plaintiff, as to engender the clear conviction that the verdict was the consequence of mistake, passion, prejudice, or partiality, as contended. R.R. 1:5-3; 4:61-1(a). It is for the jury, not the court, to assess damages in the ordinary course, *16 subject to the discreet superintendence of the trial judge on motion. Hager v. Weber, 7 N.J. 201, 212 (1951). The trial judge found the award not excessive. We see no basis here for substituting our judgment for his. Cf. Hartpence v. Grouleff, 15 N.J. 545 (1954); Gallichio v. Gumina, 35 N.J. Super. 442 (App. Div. May 19, 1955).
Affirmed.