BENJAMIN APPLESTEIN, PLAINTIFF, v. UNITED BOARD
& CARTON CORPORATION, A NEW JERSEY CORPORA-
TION, *ET AL.*, DEFENDANTS, AND SAUL L. EPSTEIN
AND INTERSTATE CONTAINER CORPORATION, DE-
FENDANTS.

MARTHA U. BEUERLEIN, T/*A* HENNESEY & CO., INDI-
VIDUALLY AND ON BEHALF OF A CLASS OF
STOCKHOLDERS SIMILARLY SITUATED, PLAINTIFF-
RESPONDENT, v. UNITED BOARD & CARTON CORPO-
RATION, A NEW JERSEY CORPORATION, *ET AL.*,
DEFENDANTS-APPELLANTS, AND SAUL L. EPSTEIN
AND INTERSTATE CONTAINER CORPORATION, DE-
FENDANTS-APPELLANTS.

Argued April 25, 1961—Decided June 30, 1961.

344

*Mr. Isadore Glauberman* argued the cause for defendants-appellants, United Board & Carton Corporation, *et al.* (*Mr. Sheldon A. Weiss,* on the brief).

*Mr. Morris M. Schnitzer* argued the cause for defendants-appellants Saul L. Epstein and Interstate Container Corporation (*Messrs. Kasen, Schnitzer & Kasen,* attorneys).

*Mr. Seymour Margulies* argued the cause for plaintiff-respondent, Martha U. Beuerlein, t/a Hennesey & Co., individually and on behalf of a class of stockholders similarly situated (*Messrs. Warren, Chasan & Leyner,* attorneys; *Mr. Seymour Margulies,* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The defendants seek reversal of two Chancery Division orders denying their applications for an injunction to restrain the plaintiff, Martha Beuerlein, from prosecuting a stockholder's derivative action in the Supreme Court of New York.

Events leading up to the institution of the New York action are as follows: the plaintiff, a New Jersey resident and a minority stockholder of the United Board & Carton Corporation (United), a New Jersey corporation, instituted a class action in the Chancery Division to prevent consummation of an agreement for the "exchange of stock" between United and Interstate Container Corporation (Interstate), a corporation of New York.[1] Named as defendants were United, its seven directors, and Interstate. Saul L. Epstein, president and sole stockholder of Interstate, and a party to the aforesaid agreement, was permitted to intervene as a defendant. In her complaint, plaintiff charged that the defendants intended to effectuate a corporate merger under the guise of an exchange of stock and in disregard of stockholder rights under the New Jersey merger statute. *R. S.* 14:12–1 *et seq.* She also charged that the proposed transaction was illegal because it was unfair, a despoliation and waste of United assets, and the product of bad faith, self-dealing and concealment by the individual defendants. In accordance with her allegations, plaintiff asked for an injunction prohibiting a stockholder meeting previously called by United for approval of the proposed corporate transaction, and a declaration that the agreement between United and Interstate was illegal. She did not ask damages for United or herself.

United answered the complaint and cross-claimed against Interstate and Epstein for a declaratory judgment that the

---

[1] Plaintiff's action was consolidated with a similar action brought by another United stockholder, Benjamin Applestein. The propriety of the requested injunctive relief involved in this appeal is not related to the Applestein suit.

corporate transaction contemplated by the parties was a merger and that the United-Interstate agreement had lapsed by its terms. Interstate and Epstein answered the complaint and cross-claim, and cross-claimed in turn for specific performance or damages in the alternative. United answered, reaffirming the position taken on its own cross-claim. Certain stockholders of United, who were in favor of the agreement, were granted leave to intervene as defendants, answered the complaints and all cross-claims, and counterclaimed and cross-claimed in turn for a declaratory judgment that the agreement was a valid stock purchase to be followed by a merger. Interstate, Epstein and United answered the intervenors' cross-claim. And the plaintiff was given leave to respond to all cross-claims and counterclaims.

Before the plaintiff filed her responsive pleadings, she and all defendants executed a written stipulation whereby they agreed:

"1. To submit for decision, as if on motions and cross-motions for summary judgment, the issue whether the Agreement  *  *  * between United Board & Carton Corporation, Interstate Container Corporation and Saul L. Epstein, and the transaction  *  *  * [contemplated therein], amount to a merger, entitled dissenting stockholders of United Board & Carton Corporation to an appraisal of their stock, and is therefore invalid  *  *  *
*         *         *         *         *         *         *         *
5. All other issues in the case are reserved."

Judge Kilkenny, then sitting in the Chancery Division, consented to decide "as upon motions  *  *  * for partial summary judgment  *  *  * [the] single limited issue" presented by the parties' stipulation. He held in a written opinion that the proposed "exchange of stock" was a *de facto* merger. 60 *N. J. Super.* 333 (1960). And he subsequently entered a judgment enjoining the defendants from carrying out the United-Interstate agreement except upon prior compliance with the merger statute. Defendants appealed. We certified the cause before argument was heard in the Appellate Division, and affirmed on the opinion of the Chancery Division. 33 *N. J.* 72 (1960).

Sixteen days later, the plaintiff instituted the derivative stockholder action in the Supreme Court of New York on behalf of United and against Interstate, Epstein, and the directors of United. In her New York complaint, the plaintiff charged that the defendants, by participating in the United-Interstate agreement and in efforts to consummate the corporate transaction contemplated therein, were guilty of fraud, unfairness, concealment and self-dealing. She sought monetary damages on behalf of United for the corporation's expenses in connection with the proposed merger and resulting litigation, and damages for herself to cover her expenses in the New York suit. United and its directors then applied to the New Jersey Superior Court, Chancery Division, for an order restraining the plaintiff from proceeding with the New York action. Interstate and Epstein also applied for such an order. The applications were made as ancillary to the original New Jersey proceeding. Judge Kilkenny, who rendered the judgment that the proposed corporate transaction was a merger, had been assigned to the Appellate Division. Consequently, another judge of the Chancery Division heard the applications.

The two groups of defendants advanced different reasons for issuance of the injunction. United and its directors argued that plaintiff's New York action is properly a facet of the New Jersey litigation. They contended that for that reason and because all the New York defendants are before the New Jersey court an injunction should issue to prevent the vexation and harassment incident to defending bistate litigation. Interstate and Epstein argued that Judge Kilkenny's judgment terminated the New Jersey proceeding; that the New York and New Jersey actions concern the same controversy; that plaintiff would be precluded under New Jersey law from further litigating in this State the matters which are the subject of her New York action; and that therefore, an injunction should issue to prevent evasion of the New Jersey law by resort to the New York courts. The Chancery Division rejected both contentions and denied the

applications. It reasoned that the defendants were not subject to the harassment of bistate litigation because the judgment entered by Judge Kilkenny terminated the New Jersey proceeding. And it concluded that "the controversy in each case differs; the object in each case is different, and the relief sought is also different."

The defendants separately appealed to the Appellate Division and obtained an interlocutory injunction pending determination of the appeals. The plaintiff then made a motion requesting us to recall the mandate which issued in conformity with our affirmance of the judgment entered by Judge Kilkenny, and to "enter an order expressly and specifically directing that the litigation be in all things terminated, except for the right of counsel to move for the allowance of counsel fees before the trial court." We denied the motion, but certified and consolidated the appeals before argument in the Appellate Division.

The defendants ask us to reverse the orders below for the same reasons they asked the Chancery Division to issue the injunction.

It is beyond doubt that a court of equity has the power to restrain a party over which it has personal jurisdiction from prosecuting judicial proceedings in another state. *Trustees of Princeton University v. Trust Co. of N. J.,* 22 *N. J.* 587, at *p.* 598 (1956); *O'Loughlin v. O'Loughlin,* 6 *N. J.* 170, at *p.* 178 (1951); Messner, "The Jurisdiction Of A Court Of Equity Over Persons To Compel The Doing Of Acts Outside The Territorial Limits Of The State," 14 *Minn. L. Rev.* 494, 495–506 (1930); Note, "When Courts Of Equity Will Enjoin Foreign Suits," 27 *Iowa L. Rev.* 76 (1941); Annotation 6 *A. L. R.* 2d 896, at *p.* 899 (1949). Our courts have consistently exercised that power to preserve their prior jurisdiction over a particular controversy so that they may render complete and final justice, *Home Insurance Co. v. Howell,* 24 *N. J. Eq.* 238, 239 (*Ch.* 1873), and to protect parties from the vexation and oppression of litigating the same controversy in different states. *Von*

*Bernuth v. Von Bernuth,* 76 *N. J. Eq.* 177 (*Ch.* 1909). Both of these traditionally accepted reasons for issuing an anti-suit injunction are based on the fundamental fact that the subject matter of the foreign proceeding is properly a part of prior pending litigation in the jurisdiction wherein the injunctive relief is sought. Thus, the question for decision on this appeal is two-fold: (1) Is there litigation pending in New Jersey, and, (2) if so, does it encompass or should it encompass the subject matter of the New York action?

To determine whether an action is pending in New Jersey, it is necessary to examine, in light of relevant principles governing summary judgment procedure, the nature of the judgment adjudicating that the proposed United-Interstate transaction was a merger.

██ Under *R. R.* 4:58, either a plaintiff (*R. R.* 4:58–1), or a defendant (*R. R.* 4:58–2), or both, may move at an early stage in the litigation for a summary judgment. When the supporting papers show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment as a matter of law, a judgment will be entered in his favor (*R. R.* 4:58–3). If the summary judgment adjudicates or makes moot all the issues raised by the pleadings, it is final in nature and can be directly appealed from. See *R. R.* 1:2–1, 2:2–1; *Petersen v. Falzarano,* 6 *N. J.* 447, at *pp.* 452–453 (1951). For descriptive purposes, we shall call such a judgment a "complete summary judgment."

█ Our rules of procedure also contemplate that in appropriate situations a trial court may enter a summary judgment which does not terminate the proceedings. *R. R.* 4:58 provides in subdivision 1 that a claimant and in subdivision 2 that a defending party, may move for summary judgment as "to all *or any part* [*of a claim*]." [Emphasis added] And *R. R.* 4:58–4 provides that if "judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary," the court shall, if practicable, ascertain what

material facts are established and what are in good faith controverted. The subsequent proceedings are then limited to a trial of the controverted facts. It is clear that the above-enumerated sections of *R. R.* 4:58 permit a party to move for, and a court to render, summary judgment upon less than the whole case. Such an adjudication has been referred to as a "partial summary judgment."[2] See, *e. g.*, Annotation 75. *A. L. R.* 2d 1201, 1206, *n.* 3 (1961) (collecting cases). It may encompass less than all the issues arising from a single claim; or it may encompass less than all the claims joined in a single action. In either case, it removes the determined matter from the trial of the case. In this respect it serves the same function as a pretrial order under *R. R.* 4:29—speeding up litigation by eliminating before trial matters in regard to which there is no genuine issue of fact. See *Leonard v. Socony-Vacuum Oil Co.*, 130 *F.* 2d 535, at *p.* 536 (7 *Cir.* 1942).

A "partial summary judgment" differs from a "complete summary judgment" in two essential respects. It is apparent that, by its very nature, a partial summary judgment cannot end a proceeding and is therefore an interlocutory adjudication. From this difference flows the second—that a partial summary judgment is not, without more, appealable. Our rules, however, give the trial court the

---

[2] Professor Moore, commenting on operation of the analogous federal rule (*F. R. Civ. P.* 56, 28 *U. S. C. A.*) states that the term "'partial summary judgment' as applied to an interlocutory summary adjudication is often a misnomer." 6 *Moore, Federal Practice* par. 56.20[3], *p.* 2303 (1953). The basis for Professor Moore's observation is the fact that a judgment is defined by the federal rules as including a "decree and any order from which an appeal lies." (*F. R. Civ. P.* 54(a)) Since "judgment" is defined in terms of appealability, and, under the federal practice (as in New Jersey), an interlocutory order is ordinarily not appealable, an interlocutory summary adjudication obviously could not be a judgment. Since the New Jersey rules do not define "judgment" in terms of appealability no verbal inconsistency arises from the use of the term "partial summary judgment" to designate an interlocutory summary adjudication.

authority, under certain circumstances, to transmute a summary adjudication from an interlocutory to a final judgment. *R. R.* 4:55–2.

*R. R.* 4:55–2 provides that if a trial court adjudicates by partial summary judgment one or more but less than all the claims joined in a single action, it may direct the entry of a final judgment "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." See *Eisenberg v. Trad Television Corp.,* 22 *N. J. Super.* 332 (*App. Div.* 1952); *Bartzak v. John W. McGrath Corp.,* 23 *N. J. Super.* 301 (*App. Div.* 1952). It should be emphasized that the entry of a final partial summary judgment under *R. R.* 4:55–2 does not terminate the case. The judgment remains "partial" insofar as the life of the litigation is concerned. The effect of invoking the procedures of *R. R.* 4:55–2 is simply to render the judgment and the matter adjudicated therein appealable.

With the above principles in mind, we return to an examination of the summary judgment entered by Judge Kilkenny. The operative effect of that judgment can be best understood in light of the preceding history of the litigation —specifically, the plaintiff's complaint, the stipulation executed by the parties, and the opinion of Judge Kilkenny pursuant to which the judgment was entered.

As previously mentioned, plaintiff made two primary allegations in her complaint. First, that the proposed corporate transaction was a merger which would be invalid except upon prior compliance with the merger statute. And second, that even upon prior compliance with the merger statute the proposed transaction was illegal because it was unfair and the product of bad faith, concealment, and self-dealing. There was thus presented initially to the court a number of matters for determination—whether the facts showed a *de facto* merger, whether the individual defendants had concealed from stockholders various aspects of the United-Interstate agreement, whether they were guilty of

bad faith and self-dealing, and whether the agreement was unfair because it would result in despoliation and waste of United's assets.

Upon written stipulation, the plaintiff and all defendants agreed to submit for Judge Kilkenny's determination whether the transaction embodied in the United-Interstate agreement was a merger. They agreed that "all other issues in the case are reserved." It is clear, therefore, that in the contemplation of the parties only one of the several matters raised by the complaint was being submitted for the court's consideration. It is equally clear that Judge Kilkenny entertained the same view. For in his written opinion he noted that he was deciding a "single limited issue"[3] presented pursuant to agreement by the parties as upon motions for a "partial summary judgment." 60 *N. J. Super.*, at *p.* 336. He also noted that "the stipulation of the parties removed from the court's *present consideration* not only the issue of the basic equity or fairness of the agreement, but also the legal effect and validity of the pre-determination of directorships, officers, salaries, and other similar terms of the bargain between the parties." [Emphasis added] 60 *N. J. Super.*, at *p.* 340.

Pursuant to his holding that the proposed corporate transaction was a merger, Judge Kilkenny entered the following judgment:

---

[3] It is unnecessary for us to determine on this appeal whether Judge Kilkenny decided one of several *issues* raised by a single *claim* or one of multiple claims joined in a single *action*. Either conclusion would leave unaffected the "partial" character of the judgment. The question would be relevant, however, if the appealability of the judgment were here in issue. For *R. R.* 4:55–2, which allows the trial judge to make a partial summary judgment final, says "the court may direct the entry of a final judgment upon one or more but less than all of the *claims*." [Emphasis added] The analogous federal rule (*F. R. Civ. P.* 54(b)) has been interpreted not to apply to the summary adjudication of less than all the issues raised by a single claim. 6 *Moore, Federal Practice*, par. 54.27[3], *p.* 209 (1953); Annotation 75 *A. L. R. 2d* 1201, at *pp.* 1209–1213 (1961) (collecting cases).

"It is, on this 29th day of March, 1960,

ORDERED, that judgment be entered in favor of the plaintiffs Benjamin Applestein and Martha U. Beuerlein on their respective complaints and against the defendants thereto and in favor of defendant United Board & Carton Corporation on its cross-claim against the defendants Interstate Container Corporation and Saul L. Epstein adjuding that the transaction as contemplated by the contract of July 7, 1959, is a merger, and that the defendants United Board & Carton Corporation, its officers and agents, Interstate Container Corporation, its officers and agents, and Saul L. Epstein, be enjoined from carrying out the terms of said agreement of July 7, 1959, except upon prior compliance with the merger statute R. S. 14:12–1, et seq.; and it is further

ORDERED, that the cross-claim of the defendants Interstate Container Corporation and Saul L. Epstein against the defendant United Board & Carton Corporation, is hereby dismissed, and it is further

ORDERED, that the counterclaim of the defendants [intervening stockholders] * * * against the plaintiffs Benjamin Applestein and Martha U. Beuerlein and their cross-claim against the defendants United Board & Carton Corporation and Saul L. Epstein and Interstate Container Corporation are hereby dismissed.

And it is further ORDERED that there being no just reason for delay, the foregoing judgment shall be entered as a final judgment, and it is

FURTHER ORDERED that the allowance of fees and costs to counsel for the plaintiffs, if any, is expressly reserved, for a hearing after final determination of any appeal taken from this judgment and Rule 4:55–8 is expressly relaxed accordingly upon the consent of all counsel herein."

█ The Chancery Division judge before whom defendants moved for an injunction construed the above judgment as a termination of the entire case, except for the possible award of counsel fees. He reasoned that the order disposed of every pleading in the case; that it reserved only the issue of fees; and that therefore there was nothing left in the litigation. That such an interpretation is erroneous is apparent from a reading of the order in light of the litigational context in which it arose, and in light of the relevant rules of practice concerning the entry and appealability of summary judgments. First, Judge Kilkenny expressly adjudicated only one of the matters raised by the pleadings, i. e., "that the transaction as contemplated by the contract of July 7, 1959, is a merger." Having made

that adjudication, it was necessary to dismiss all counter-claims and cross-claims because each turned on whether the proposed corporate transaction was a merger. Dismissal of those claims, however, still left undisposed the charge in plaintiff's complaint that even upon compliance with the merger statute the agreement and transaction contemplated therein were illegal.

The foregoing conclusion is confirmed by the next-to-the last paragraph of the judgment which reads: "And it is further ORDERED that there being no just reason for delay, the foregoing judgment shall be entered as a final judgment * * *." As previously mentioned, these words express findings which are prescribed by *R. R.* 4:55-2 as necessary to make a partial summary judgment final. Since a summary judgment which disposes of all the matters in a case is final without more, it would have been unnecessary for Judge Kilkenny to invoke the procedures of *R. R.* 4:55-2 unless he intended to enter a partial summary judgment but wished to make that judgment immediately appealable.

The fact that the last paragraph of the judgment expressly reserves the allowance of fees and costs to plaintiff's counsel, does not indicate that the order is a complete judgment. *R. R.* 4:55-8 provides that "if on the determination of a matter an allowance is made for legal services, the judgment or order stating the determination shall include the allow-ance." Judge Kilkenny determined a "matter" when he decided that the proposed transaction was a merger. There-fore, under the wording of our rule if he intended to allow counsel fees allocable to the litigation of that matter he had to include the order for the fees in his judgment. Thus the reservation of fees in the order refers only to those allocable to the matter decided upon partial summary judg-ment. Judge Kilkenny relaxed the operation of *R. R.* 4:55-8 probably because he wanted to consider the award of all fees at the end of the entire litigation.

For the foregoing reasons, we conclude that an action is still pending in the State of New Jersey.

The next question is whether the pending New Jersey action encompasses the subject matter of the New York suit. We think it does. The sound administration of a judicial system requires that all facets of a single dispute between parties be completely determined in one action. Thus, to end wasteful division of authority between the court of law and the court of chancery in our former judicial system our 1947 *Constitution* provided that "the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined." *Constitution of 1947, Art.* VI, *sec.* III, *par.* 4. To implement this policy of judicial administration, we have held that a defendant must assert all matters which will defeat a claim against him and a plaintiff must seek complete relief for vindication of the wrong he charges. See *Massari v. Einsiedler,* 6 *N. J.* 303 (1951); *Ajamian v. Schlanger,* 14 *N. J.* 483 (1954); *Thatcher v. Jerry O'Mahony, Inc.,* 39 *N. J. Super.* 330 (*App. Div.* 1956); *Vacca v. Slika,* 21 *N. J.* 471 (1956).

In the present action, all of the parties to the New York suit are before the New Jersey court. The allegations of plaintiff's two complaints are almost identical. Only the relief prayed for differs. She seeks invalidation of the United-Interstate agreement in New Jersey and damages for making and attempting to carry out the agreement in New York. Both forms of relief depend essentially upon resolution of the same legal and factual issues. The Chancery Division has full authority to resolve the entire dispute. It is of no moment that the plaintiff now asserts additional damages consisting of the expenses incurred by United and herself in this very litigation. If a basis for recovery exists, it is a simple matter to provide for that further element of damage by a supplemental hearing. Thus, the plaintiff can include within the confines of a single litigation all related aspects of the same dispute, thereby avoiding judicial

waste, and permitting one court to render complete and final justice. We conclude that the pending New Jersey litigation encompasses the subject matter of plaintiff's New York action.

The necessity for exercise in this case of the Chancery Division's acknowledged injunctive power is clear. It is necessary to preserve the prior jurisdiction of our court; to protect defendants from the unnecessary vexation and harassment of defending bistate litigation; and to prevent evasion of an established policy of this state, *i. e.,* the final and complete disposition by one court in one action of all facets of a single dispute. We arrive at the conclusion that an anti-suit injunction must issue with an acute awareness that the power to enjoin prosecution of a foreign proceeding ought to be exercised sparingly, *Cole v. Cunningham,* 133 *U. S.* 107, 127, 10 *S. Ct.* 269, 33 *L. Ed.* 538 (1890) ; see *Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 74 *N. J. Eq.* 457, at *p.* 473 (*Ch.* 1908), but that it should be conscientiously exercised whenever equity and justice require.

Defendants Interstate and Epstein argue that plaintiff should not only be enjoined from further prosecuting the New York action, but should be precluded from returning to the New Jersey court. This argument is based upon the proposition that plaintiff allowed the New Jersey litigation to proceed to complete termination and therefore cannot further litigate any aspects of the same controversy. Our previous discussion of Judge Kilkenny's judgment and the nature of a partial summary judgment under our rules of practice show that plaintiff did not allow the New Jersey litigation to terminate—that indeed it is still pending. Under our liberal rules of pleading, she may amend her complaint to include therein a prayer for damages on behalf of United for the injury caused to the corporation by the defendants.

The orders of the Chancery Division denying defendants' applications for an injunction are reversed and the cause remanded, with direction to enjoin plaintiff from proceeding with the New York action. She will be allowed to amend

her pleadings to include therein the relief prayed for in New York and to proceed with the New Jersey litigation. If she chooses not to do so, the action should be dismissed.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.